UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT LOFTUS,

                Plaintiff,

    v.

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.,

                Defendant.

---

20-Cv-7290 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") brings this motion to dismiss plaintiff Robert Loftus's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Loftus alleges that FINRA violated his rights under the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a, *et seq*, when it denied him a forum to petition for expungement of his three-year-old FINRA disciplinary record. Plaintiff now requests that this Court order FINRA to expunge his disciplinary record or grant him a hearing on his expungement petition. Because this Court lacks subject-matter jurisdiction to review Loftus's disciplinary record due to his failure to exhaust his administrative remedies, and because plaintiff has no right to an expungement hearing, defendant's motion is granted and the complaint is dismissed.

## I. BACKGROUND

### A. FINRA's Enforcement Procedure

    This dispute stems from a 2017 disciplinary proceeding brought by FINRA against Loftus, a licensed stockbroker formerly employed by Wells Fargo. FINRA is a private corporation and self-regulatory organization ("SRO") registered with the SEC as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. § 78o-3, *et seq*. It has been tasked by the SEC with "conducting investigations and commencing disciplinary proceedings against [FINRA] member firms and their associated member representatives relating to compliance with the federal securities laws and regulations." *Datek Securities Corp. v. National Ass'n of Securities Dealers, Inc.*, 875 F. Supp. 230, 232 (S.D.N.Y. 1995); *see* 15 U.S.C. § 78o-3(b). These investigations and disciplinary proceedings are governed by the FINRA Rules, each of which must be approved by the SEC before it takes effect. 15 U.S.C. § 78s(b)(1). The Exchange Act vests FINRA with various tools to "appropriately discipline[]" its members, including "expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or any other fitting sanction." 15 U.S.C. § 78o-3(b)(7); *see also Fiero v. Fin. Indus. Regulatory Auth., Inc.*, 660 F.3d 569, 574 (2d Cir. 2011).

The FINRA Rules also create a comprehensive process for the review of any adverse disciplinary action. After FINRA's Department of Enforcement files a complaint, an appointed hearing panel makes an initial determination on the issue. FINRA Rule 9213(a)-(b). Next, an aggrieved party may appeal the hearing panel's decision to FINRA's National Adjudicatory Council, which may affirm, reverse, or modify the decision. FINRA Rule 9349(a). The aggrieved party may then petition the SEC for it to review that determination, 15 U.S.C. § 78s(d)(2), after which a further appeal lies to the relevant United States Court of Appeals, 15 U.S.C. § 78y(a)(1).

As part of its disciplinary responsibilities, FINRA is statutorily required to maintain a database of its disciplinary actions. 15 U.S.C. § 78o-3(i)(5). It does so through its Central Registration Depository ("CRD"), portions of which, including final regulatory actions, are made available to the public through the BrokerCheck tool on FINRA's website. *See BrokerCheck*, FINRA, https://brokercheck.finra.org/; *see also* 15 U.S.C. § 78o-3(i)(1)(B) (requiring an SRO to make portions of CRD records public through a "readily accessible electronic or other process").

### B. Loftus's Disciplinary Proceeding and Order

In July 2016, FINRA's Department of Enforcement filed a complaint against Loftus.[1] The complaint alleged that Loftus, while employed by FINRA member-firm Wells Fargo in 2012-2013, engaged in check-kiting, depositing multiple "worthless" checks drawn on his personal checking account into his Wells Fargo brokerage account in order to "benefit temporarily from the 'float' on the checks (i.e., to derive the use and benefit of the funds from the time they were credited to his account until other funds were deposited into the account)." (Compl. Ex. 3 at 1.) Eight months later, in March 2017, that proceeding terminated in an order in which plaintiff consented to a three-month suspension, $5,000 fine, and "entry of findings that he engaged in check kiting." (*Id.* ¶¶ 17, 41.) Plaintiff's offer of settlement leading to that order acknowledges that "the Order will become part of [Loftus's] permanent disciplinary record" and "will be made available through FINRA's public disclosure program in accordance with FINRA Rule 8313."[2] (Mitchell Decl. Ex. F at 8, ECF No. 16.) The final order further waives any right of Loftus to appeal or "otherwise to challenge or contest the validity of the Order." (*Id.*) Details of the enforcement action are now publicly available by BrokerCheck search.

---

[1] For purposes of this motion to dismiss the complaint, the Court takes "all factual allegations in the complaint as true, and draw[s] all reasonable inferences in plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Gil v. Vogilano*, 131 F. Supp. 2d 486, 491 (S.D.N.Y. 2001).

[2] Although Loftus did not attach his offer of settlement to the complaint, the Court considers it on this motion to dismiss because plaintiff repeatedly refers to the settlement and relies "on the terms and effects of" the settlement documents throughout the complaint. *Chambers*, 282 F.3d at 153 & n.3.

2

In 2020, plaintiff filed a claim in FINRA's arbitration forum seeking expungement of his disciplinary order. FINRA's arbitration forum offers dispute resolution services to private parties to resolve disputes involving stockbrokers and their customers, as well as intra-firm and intra-broker disputes. *See* FINRA Rules 12200 and 13200. This private arbitration service has no relation to FINRA's disciplinary functions.

In late May 2020, FINRA determined that plaintiff's claim was "not eligible for arbitration" and closed his case. (Compl. Ex. 1.) Plaintiff then filed a complaint in this Court, seeking an order "[d]irecting FINRA . . . to expunge the subject record and sanction . . . or, in the alternative, Directing the Defendant FINRA to grant the Plaintiff a Hearing to determine whether expungement is proper under the circumstances." (*Id.* ¶ 64.) In the complaint, Loftus "object[s] to the characterization of the subject occurrences as 'check kiting'" and argues that the facts "make clear . . . that he lacked the requisite intent to commit any fraud whatsoever." (*Id.* ¶¶ 33-34). Moreover, plaintiff claims that the public disclosure of his disciplinary order has hurt "his ability to conduct his trade[.]" (*Id.* ¶ 41.) Loftus alleges that FINRA's statutory mandate to "provide a fair procedure for the disciplining of its members," 15 U.S.C. § 78o-3(b)(8), entitles him to a hearing on his request that FINRA expunge its disciplinary finding against him. (*See* Compl. ¶¶ 15, 44; Plt.'s Opp'n at 20, ECF No. 21.) Furthermore, Loftus claims, because in any such expungement hearing "the Plaintiff would prevail based upon the reasonableness of his request and the fundamental equities therein," this Court should simply direct FINRA to expunge his record. (*Id.* ¶¶ 63-64.)

## II. DISCUSSION

FINRA now moves to dismiss the complaint, alleging that this Court lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and that plaintiff fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Because "the first and fundamental question is that of jurisdiction," the Court turns to plaintiff's subject-matter jurisdiction claim first. *Spencer v. Patey*, 243 F. 555, 556 (2d Cir. 1917) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

### A. The Court Lacks Subject-Matter Jurisdiction to Review FINRA's Disciplinary Order Because Plaintiff Failed to Exhaust His Administrative Remedies

Federal courts are courts of limited jurisdiction. Absent an affirmative jurisdictional grant by Congress, "the district court lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A corollary of this principle is the doctrine of exhaustion of remedies, which provides that, when Congress has set forth an exclusive administrative scheme for redress of legal wrongs, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has

been exhausted." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 592 (2d Cir. 1993) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 US. 41, 50-51 (1938)).

FINRA claims that Loftus, by seeking the expungement of his disciplinary record in this Court, "seeks to end-run the structure established by Congress and to dictate FINRA's performance of its regulatory duties." (Def.'s Mot. at 14.) Indeed, it is well-established that "given the 'comprehensive review procedure' established by the Exchange Act, Congress intended that the doctrine of exhaustion of administrative remedies, in appropriate circumstances, apply to challenges to the disciplinary proceedings of the national security exchanges." *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 57 (2d Cir. 1996) (quoting *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979)); *see also Standard Inv. Chartered, Inc. v. Nat'l Ass'n. of Sec. Dealers, Inc.*, 2007 WL 1296712, at *2 (S.D.N.Y. May 2, 2007).

Where, as here, the statutory scheme *requires* a litigant to "pursue all of his administrative remedies before he will be permitted to seek judicial relief," *Touche Ross & Co. v. Sec. Exch. Comm'n*, 609 F.2d 570, 574 (2d Cir.1979), this requirement is jurisdictional, non-discretionary, and non-waivable. *See Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them.") Accordingly, when a party has failed to pursue relief through these statutorily prescribed channels before filing suit, dismissal for lack of subject-matter jurisdiction is appropriate. *See, e.g., Standard Inv. Chartered, Inc.*, 2007 WL 1296712, at *2 (S.D.N.Y. May 2, 2007); *Am. Benefits Grp., Inc. v. Nat'l Ass'n of Sec. Dealers*, 1999 WL 605246, at *1 (S.D.N.Y. Aug. 10, 1999).

As detailed above, the Exchange Act's "comprehensive review procedure," *Barbara*, 99 F.3d at 57, requires a party aggrieved by a FINRA disciplinary proceeding to appeal to FINRA's National Adjudicatory Council, FINRA Rule 9349(a), and then the SEC, 15 U.S.C. § 78s(d)(2), before finally filing in the relevant U.S. Court of Appeals, 15 U.S.C. § 78y(a)(1). Loftus did not follow these procedures. After agreeing to a disciplinary settlement in 2017—one in which he both acknowledged that "the Order will become part of his permanent disciplinary record," and waived any right to appeal or "otherwise challenge or contest the validity of the Order" (Mitchell Decl. Ex. F at 8)—Loftus took no action for three years. He did not challenge any aspect of his disciplinary order with the National Adjudicatory Council, nor did he petition for SEC review nor file an appeal in the U.S. Court of Appeals for the Second Circuit.

Instead, in 2020, plaintiff went to FINRA's arbitration forum seeking expungement of his disciplinary order. (Compl. Ex. 1.) After FINRA denied Loftus access to its arbitration forum—a forum that, as noted above, exists to facilitate the resolution of private securities disputes, not FINRA disciplinary actions—Loftus filed this complaint, requesting that the Court direct FINRA "to expunge the subject record and sanction," or, in the alternative, to grant Loftus a hearing to "determine whether expungement is proper." (*Id.* ¶¶ 2, 64.) Plaintiff bases his expungement claim on the alleged unfairness of his underlying disciplinary order; in particular, Loftus "object[s] to the

4

characterization of the subject occurrences as 'check kiting,'" as "he lacked the requisite intent to commit any fraud whatsoever." (*Id.* ¶¶ 33-34.) (Plaintiff brings these objections notwithstanding the fact that, in his disciplinary settlement, executed through counsel, "Loftus consented to the sanctions and the entry of findings that he engaged in check kiting." (*Id.* ¶ 32.))

Loftus has transparently failed to follow Congress's prescribed administrative process for challenging a FINRA enforcement action and this Court therefore lacks jurisdiction to review plaintiff's disciplinary order at all, let alone order its expungement. *See, e.g., Santos-Buch v. Fin. Indus. Regulatory Auth., Inc.*, 591 F. App'x 32, 33 (2d Cir. 2015).

### B. Plaintiff Has No Legal Right to a FINRA Expungement Hearing

In an effort to avoid the strictures of the exhaustion requirement, plaintiff attempts to recast the nature of his complaint. In his response to FINRA's motion to dismiss, Loftus claims that he "is not challenging a disciplinary action of FINRA" at all, and instead "is only seeking a ruling from this Court that FINRA should have granted him a hearing in which to have his request for expungement adjudicated." (Plt.'s Resp. at 10, ECF No. 21.) As an initial matter, this representation is inaccurate: much of Loftus's complaint is devoted to relitigating the facts of his 2017 disciplinary proceeding (*see* Compl. ¶¶ 19-41), and he repeatedly requests that this Court "look at the underlying facts for the disciplinary proceeding, and make a determination that the Plaintiff did not engage in 'check kiting', and therefore merits the expungement of the record." (Plt.'s Resp. at 12; Compl. ¶¶ 52, 64.) As explained above, the Court has no jurisdiction to consider these arguments.

However, to the extent plaintiff alleges a right to a FINRA expungement hearing enforceable through a private cause of action, such a claim is indeed independent of the merits of his disciplinary proceeding and not subject to administrative exhaustion. *See Santos-Buch*, 591 Fed. Appx. at 34. However, Loftus has failed to establish any legal entitlement whatsoever to such a hearing.

First, Loftus points to no provision in either the Exchange Act or the FINRA Rules that even arguably creates a right to an expungement hearing. Plaintiff cites the Exchange Act's requirement that any SRO registered with the SEC "provide a fair procedure for the disciplining of members," 15 U.S.C. § 78o-3(b)(8), but fails to explain how this broad mandate guarantees an expungement hearing. If anything, "[p]ermitting Plaintiff to erase his permanent disciplinary record" and mislead "the investing public . . . into believing that Plaintiff has no prior securities disciplinary record" (Def.'s Mot. at 16) would itself contravene both the Exchange Act and FINRA's SEC-approved Rules.

Plaintiff also cites FINRA Rule 2080, entitled "Obtaining an Order of Expungement of Customer Dispute Information from the Central Registration Depository (CRD) System," in support of his claim. (Compl. ¶¶ 49-51.) However, as its name makes

clear—and as plaintiff indeed admits—Rule 2080 only allows the expungement, under narrow circumstances, of customer-initiated complaints, not FINRA-initiated enforcement actions against a stockbroker. (Compl. ¶ 49 n.1.)

Second, even if the FINRA Rules did require an expungement hearing—which they plainly do not—the Second Circuit has long held that "there is no private right of action available under the Securities Exchange Act to . . . challenge an exchange's failure to follow its own rules." *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 208 (2d Cir. 1999); *see also Santos-Buch*, 591 Fed. Appx. at 34; *Feins v. American Stock Exch., Inc.*, 81 F.3d 1215, 1216 (2d Cir. 1996); *Brawer v. Options Clearing Corp.*, 807 F.2d 297, 298–99 (2d Cir. 1986).

Moreover, plaintiff's attempt to read an implied cause of action for "fundamental due process" into the Exchange Act's broad requirement that SROs "provide a fair procedure for the disciplining of members," 15 U.S.C. § 78o-3(b)(8), flies in the face of both statutory structure and Second Circuit precedent. *See e.g., Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 182 (2d Cir. 1966). FINRA, a private corporation and self-regulatory organization, is not a state actor, and courts have spoken in one voice in rejecting attempts to challenge its enforcement actions on the basis of due process. *See, e.g., Santos-Buch*, 32 F. Supp. 3d at 484-85 ("[T]he Second Circuit has repeatedly held that [FINRA] is a private actor."); *see also D.L. Cromwell Inv., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155 (2d Cir. 2002); *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002); *Desiderio*, 191 F.3d at 206.

### III. CONCLUSION

Because this Court lacks subject-matter jurisdiction to review plaintiff's disciplinary record, and because plaintiff has no right to an expungement hearing, defendant's motion to dismiss the complaint is granted.

Dated:   New York, New York
         February 1, 2021

SO ORDERED

_____
SIDNEY H. STEIN
U.S.D.J.